RECEIVED
IN LAKE CHARLES, LA
APR 29 2013
TONY R. MOORE, CLERK
BY_____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| SOUTHWEST VETERINARY SERVICES, INC. | : | DOCKET NO. 2:12-CV-2280 |
| VS. | : | JUDGE MINALDI |
| HARTFORD CASUALTY INSURANCE CO. | : | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [Doc. 12], filed by the defendant, Hartford Casualty Insurance Co. ("Hartford"). The plaintiff, Southwest Veterinary Services, Inc. ("Southwest") then filed an opposition [Doc. 20], and Hartford filed a reply [Doc. 24]. As the court finds the motion is fully briefed, it is ripe for review. For the foregoing reasons, Hartford's Motion for Summary Judgment is GRANTED.

### FACTUAL BACKGROUND

This case arises out of an insurance coverage dispute between Southwest and its insurer, Hartford, for damage sustained by Southwest's veterinary clinic during Hurricane Rita.[1] Southwest originally filed suit in the Fourteenth Judicial Court of Calcasieu Parish in July 2012, and Hartford then timely removed to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332.[2]

Southwest owned a veterinary clinic at 419 Shell Beach Drive in Lake Charles, Louisiana. Hartford issued to Southwest insurance policy # 83 SBW PR2272 ("the policy"),

---

[1] *See* Compl., [Doc. 1-4] at ¶ 12.

[2] Not. of Removal, [Doc. 1].

1

effective October 13, 2004 to October 13, 2005, which had a policy limit of $150,000, to insure the clinic.[3] On September 24 – 25, 2005, Hurricane Rita hit the Lake Charles area, causing damage to Southwest's clinic.[4] Southwest alleges in its complaint that, during Hurricane Rita, it "suffered a loss of pharmaceutical medicine, loss of business, loss of property, loss of records and papers, loss of accounts receivable [and] other losses that will be proven at trial," and that these losses totaled $161,000.[5]

Hartford asserts that, in the policy, it clearly establishes that insureds should give Hartford "prompt" notice of loss or damage.[6] Despite this, Southwest did not report its clinic's Hurricane Rita damage until March 29, 2010, roughly four and a half years after Rita.[7] Southwest explains this delay by noting that it originally applied for a small business loan from the Small Business Administration to pay for the damage to its facility on May 24, 2006, and was not informed by Hartford until March 2010 that the policy would actually cover some of its losses.[8] As a result, Southwest submitted claim # CP0009221387 to Hartford on March 29, 2010, and on September 15, 2010 and October 29, 2010, Hartford paid out a portion of the claim in the amount of $8,837.85 for loss of pharmaceuticals, and $50,000 for loss of business income.[9] The "Date of Loss" for each claim was listed as September 20, 2005.[10] After paying

---

[3] *See generally* The Policy, Ex. A to Defs.' Mot. for Summ. J., [Doc. 12-2].

[4] Aff. of Verlin Jones, DVM. Ex. B to Pl.'s Opp. to Mot. for Summ. J., [Doc. 20-2] at ¶ 3.

[5] [Doc. 1-4] at ¶¶ 5, 7.

[6] The Policy, [Doc. 12-2] at p. 29.

[7] March, 29, 2010 Claim, Ex. B to Def.s' Mot. for Summ. J., [Doc. 12-4].

[8] Aff. of Verlin Jones, DVM, Ex. B to Pl.'s Opp. to Mot. for Summ. J., [Doc. 20-2] at ¶ 4.

[9] *Id.* at ¶¶ 7–8; *see also* Payment for Pharmaceuticals, Ex. D to to Pl.'s Opp. to Mot. for Summ. J., [Doc. 20-2] at p. 10; Payment for Time Element Damages, Ex. E to Pl.'s Opp. to Mot. for Summ. J., [Doc. 20-2] at p. 11.

[10] *Id.* at ¶ 9.

these amounts, Hartford denied payment for the rest of Southwest's claims because of lack of documentation, which then led Southwest to file suit seeking the remainder of the policy limit not paid.[11]

Hartford now moves for summary judgment on Southwest's claims, arguing that they are barred as untimely.

## MOTION FOR SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party..." *Id.*

---

[11] *Id.* at ¶ 10–11.

## LAW AND ANALYSIS

The parties' main contention in this motion is whether, by waiting until March 29, 2010, Southwest provided "prompt notice" of its claim for damages to Hartford, in accordance with the policy terms.[12]

The Louisiana legislature expressly set a time limit in which insureds were required to file claims with their insurance company in Act 739, which provides, in relevant part:

> B. Notwithstanding any other provision of this Title to the contrary, any person or entity having a claim for damages pursuant to a homeowners' insurance policy, personal property insurance policy, tenant homeowners' insurance policy, condominium owners' insurance policy, or commercial property insurance policy, and resulting from Hurricane Rita shall have through October 1, 2007, within which to file a claim with their insurer for damages, unless a greater time period to file such claim is otherwise provided by law or by contract.

La. Rev. Stat. Ann. § 22:1894. The Louisiana Supreme Court declared this act constitutional and held that it applied retroactively. *State v. All Property & Cas. Ins. Carriers Authorized and Licensed to do Business in the State of La.*, 2006-2030 (La. 8/25/06); 937 So. 2d 313.

Based on the terms of the policy, even construing the evidence in the light most favorable to Southwest, the undersigned cannot find that, by requiring Southwest to submit "prompt notice" of the damage, this provided for a greater time period than the time period in the above statute to submit a claim to Hartford (roughly from September 24, 2005 when Rita made landfall in Lake Charles to October 1, 2007). If a greater time period is provided, it must be because the deadlines provided by the above statute and the policy were waived.

---

[12] The policy provides, in relevant part:

> Duties In The Event Of Loss Or Damage
> You must see that the following are done in the event of loss of or damage to Covered Property:
> a. Notify the police if a law may have been broken.
> b. Give us **prompt notice** of the loss or damage. Include a description of the property involved.
> c. As soon as possible, give us description of how, when and where the loss or damage occurred. . . .

The Policy, [Doc. 12-2] at p. 29 (emphasis added).

Southwest argues that, even if the policy terms or Louisiana law precluded the tardy filing of its claim, by accepting Southwest's claim in March of 2010 and then paying a portion of the claim in September and October of 2010, Hartford waived the timeliness defense for its entire Hurricane Rita claim. Hartford counters that the Louisiana Legislature has provided for protection in situations just like this, in La. Rev. Stat. Ann.§ 22:879, which provides:

> None of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer:
>
> (1) Acknowledgment of the receipt of notice of loss or claim under the policy.
>
> (2) Providing forms for reporting a loss or claim, for giving information relative thereto, or for making proof of loss, or receiving or acknowledging receipt of any such forms or proofs completed or incompleted.
>
> (3) Investigating any loss or claim under any policy or engaging in negotiations considering a possible settlement of any such loss or claim.

When viewed in isolation, ignoring the fact that Hartford paid $8,837.85 for loss of pharmaceuticals, and $50,000 for loss of business income for Southwest's Hurricane Rita claim, the uncontested evidence shows that Hartford did not get past the investigation step of the claims process for the rest of Southwest's as-yet unpaid portions of its claim. Thus, if the unpaid portions of the claim were the only amounts sought, then Hartford would have an unassailable argument that it had not waived policy timeliness defenses. The inquiry thus becomes whether, by making a partial payment on *some* of Southwest's claims, this waives the timeliness defense for the *entire* claim.[13]

---

[13] Hartford cites the Louisiana Fourth Circuit case *Lila, Inc. v. Underwriters at Lloyd's, London*, 2008-0681 (La. App. 4 Cir. 9/10/08); 994 So.2d 139, to support the argument that an insurer's unconditional payment of an undisputed amount to a first-party claimant does not constitute a waiver of any policy provisions. While the *Lila* case does say as much, Hartford fails to mention that, in the *Lila* case, the Fourth Circuit was addressing whether the insurer paying claims *during* the prescriptive period interrupted the two year prescriptive period that the Louisiana Legislature had instituted for claimants to file Katrina lawsuits. In this case, the only payments Hartford made were well after the deadline to file claims had passed.

Waiver is the "intentional relinquishment of a known right, power, or privilege." *Steptore v. Masco Constr. Co.*, 643 So.2d 1213, 1216 (La.1994); *See also Tate v. Charles Aquillard Ins. & Real Estate, Inc.*, 508 So.2d 1371, 1373 (La.1987). Reliable proof of waiver is necessary, and the burden is on the party claiming waiver to establish its existence. *Tate*, 508 So.2d at 1375. The requirements of waiver are that there is an existing right, knowledge of its existence, and either an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. *Ledoux v. Old Republic Life Ins. Co.*, 233 So.2d 731, 735 (La. App. 3 Cir. 1970); *Tate*, 508 So.2d at 1373; 16B Appleman, *Insurance Law and Practice* § 9081 (1969).

Southwest cites the Louisiana Supreme Court *Steptore* decision in support of its claim that Hartford waived its right to assert policy defenses. In *Steptore*, the Louisiana Supreme Court addressed whether an insurer waived its right to deny coverage by unconditionally assuming and continuing its insured's defense, despite knowing that the insured had violated the policy's warranty provision. The Court first noted that "[w]aiver principles are applied stringently to uphold the prohibition against conflicts of interest between the insurer and the insured which could potentially affect legal representation in order to reinforce the role of the lawyer as the loyal advocate of the client's interest." *Steptore*, 643 So. 2d at 1216. Continuing, the Court held that "when an insurer, with knowledge of facts indicating non-coverage under the insurance policy, assumes or continues the insured's defense without obtaining a non-waiver agreement to reserve its coverage defense, the insurer waives such policy defense." *Id.* Considering the facts presented, the Court found that the insurer had waived its coverage defense, reasoning:

> [I]t is undisputed that [the insurer] did not reserve its right to deny coverage under the policy prior to assuming the defense of [ the insured]. Nor did [the insurer]

6

> provide [the insured] separate counsel in order to avoid a potential conflict of interest. Accordingly, because the insurer assumed the defense without reserving its rights or otherwise protecting its interests and continued to represent the insured when its own interests were adverse to the insured, we find that [the insurer] waived any coverage defense it may have had under the policy.

*Id.*

The Fifth Circuit has extended the reasoning in *Steptore* to find that an insured can waive its right to enforce any coverage defenses, including its policy period. In *North American Capacity Ins. Co. v. Brister's Thunder Karts*, 287 F.3d 412 (5th Cir. 2002), an insured failed to report a claim to its insurer within the one year policy period. *Id.* at 416. The insurer was thus put on notice that there was no coverage under the policy. *Id.* at 416 – 17. Despite this, the insurer appointed counsel to represent itself and its insured, and waited three years before asserting no coverage. *Id.* at 417. The Fifth Circuit found that because the insurer assumed the insured's defense without reserving its rights or otherwise protecting its interest, it waived any coverage defense it might have had. *Id.*

Notably, both *Steptore* and *Brister's* involve the unique situation in which an insurer, despite knowing of a conflict of interest, proceeds to offer legal representation to its insured. Thus, *Steptore and Brister's* preclude an insurer from providing counsel to their insured on the one hand, while on the other hand asking the same counsel to mount a defense of noncoverage against their insured. While it is possible that the reasoning in *Steptore* and *Brister's* could be stretched to apply to situations in which an insurer offers payments when it has knowledge that it does not have to, these cases do not say as much. Further, in this case, the same conflict of interest in *Steptore* and *Brister's* is not present: Hartford paid part of Southwest's claim, and now declines to pay the rest. One general rule that can be culled from these cases, however, is that

waiver is much more likely in situations in which the insurer makes no attempt to reserve its rights under the policy.

While this motion does not address the prescriptive period of Southwest's claims, case law addressing whether an insurer's actions on a claim interrupted prescription offers some guidance. As the Louisiana Third Circuit noted, in *Estate of DeGraauw v. Travelers Ins. Co.*, 2006-547 (La. App. 4 Cir. 9/27/06); 940 So. 2d 858:

> In regard to an insurer's acknowledgment of a claimant's rights sufficient to interrupt the running of prescription, we have stated before that a tacit waiver or interruption of prescription may be found to have occurred if the insurer "(1) continues negotiations, thereby inducing the insured to believe the claim will be settled or not contested, (2) makes an unconditional offer of payment, or (3) performs acts of reparation or indemnity." [*Bennett v. State Farm Ins. Co.*, 03-1195 (La. App. 3 Cir. 3/24/040, 869 So. 2d 321,] 330 (citations omitted). However, we further stated:
>
>> [U]nless the insurer in some manner leads the insured to reasonably believe the time limitation has been waived while the claim is under consideration or in some other way acts so as to induce the insured to withhold suit, the suit must be filed within the prescribed period even if the claim is pending. *Blum v. Cherokee Ins. Co.*, 336 So.2d 894, 898, (La.App. 4 Cir.1976).

*Id.* at 863 – 64. In this motion, of course, the inquiry is whether Hartford made a tacit waiver which renounced the timeliness defense, as opposed to a tacit waiver which interrupted prescription. Further, on Southwest's end, the inquiry is whether Hartford reasonably led Southwest to believe that the timeliness defense was waived, as opposed to whether Southwest reasonably believed a prescription defense was waived.

In this case, Hartford has cited a string of correspondence between itself and Southwest as proof that it did not waive or renounce its timeliness defense, despite the fact that it paid some of Southwest's claims. On April 16, 2010, Hartford sent a letter to Southwest about its Hurricane Rita claim, noting that "[d]ue to late reporting of your damages we call your attention

8

to policy number 83 SBW PR2272, with effective dates for this loss of 10/13/2004 to 10/13/2005."[14] The letter includes the policy language which requires the insured to give "prompt notice" of the loss, and notes that "[a]nything done by Hartford Casualty Company in connection with the above referenced claim, including any investigation into the cause, damages or any other matters related thereto, shall not waive, modify, invalidate or forfeit any of the rights of Hartford Casualty Company or its agents."[15] On September 10, 2010, a Hartford adjuster sent an email addressing Southwest's claims for loss of pharmaceuticals and loss of valuable papers and records.[16] At the end of the email, the adjuster notes "by continuing to investigate this claim, The Hartford Casualty Insurance Company does not waive any of its rights and defenses nor any terms or conditions of the policy."[17] On October 29, 2010, the same adjuster sent an email noting that a payment for loss of business income ($50,000) was on its way, but that it needed documentation to prove losses to Southwest's accounts receivable.[18] At the end of this email, the adjuster reiterated that Hartford was not waiving any of its rights or defenses nor any terms or conditions of the policy.[19] On December 7, 2010, the adjuster sent a letter, asking for documentation for Southwest's claim for losses to its accounts receivable, and once again reiterated that "it is not the intent of The Hartford Casualty Insurance Company to

---

[14] April 16, 2010 Letter from Hartford to Southwest, Att. 1 to Def.'s Reply to Mot. for Summ. J., [Doc. 24-3].

[15] *Id.*

[16] September 10, 2010 Email from Hartford Adjuster to Southwest, Att. 2 to Def.'s Reply to Mot. for Summ. J., [Doc. 24-4].

[17] *Id.*

[18] October 29, 2010 Email from Hartford Adjuster to Southwest, Att. 4 to Def.'s Reply to Mot. for Summ. J., [Doc. 24-5].

[19] *Id.*

9

waive any of its Rights and Defenses, or any of the Terms and Conditions of the policy."[20]  On February 25, 2011, the adjuster sent an email to Southwest, noting that Hartford had already paid the claims for which Southwest had provided documentation (list of pharmaceuticals that were damaged), but that Southwest had never provided "a list of business property being claimed, proof that it was damaged at the covered location or any documentation as to any values."[21]  The adjuster then once again cited the language in the policy, which requires an insured to provide prompt notice of a claim.[22]

The uncontested evidence shows that, while Hartford may have made payments to Southwest for its Hurricane Rita claim, these were certainly not "unconditional offers of payment": Hartford reasserted again and again that any activities in handling the claim did not mean that Hartford waived the "prompt notice" requirements of the policy.  Further, even viewing the evidence in the light most favorable to Southwest, it cannot be said that simply because Hartford voluntarily paid out untimely portions of the Hurricane Rita claim for which Southwest had documentation, it was reasonable to believe that Hartford would continue to do so for the undocumented claims.  This is evidenced by the fact that, in Hartford's correspondence following issuance of the two checks for the pharmaceutical losses and loss of business income, Hartford reasserted that Southwest still had not provided documentation for the rest of its claims, and that Hartford was not waiving any defenses in the policy, including the timeliness defense. Thus, based on the evidence before the court, the court finds that Southwest cannot meet its

---

[20] December 7, 2010 Letter from Hartford to Southwest, Att. 4 to Def.'s Reply to Mot. for Summ. J., [Doc. 24-6].

[21] February 25, 2011 Email from Hartford Adjuster to Southwest, Att. 5 to Def.'s Reply to Mot. for Summ. J., [Doc. 24-7].

[22] *Id.*

burden in establishing waiver of the timeliness policy defense for the unpaid portion of Southwest's claim.

Finally, because the court has found that Southwest does not have a valid underlying claim for insurance coverage, dismissal of Southwest's bad faith claims is also proper. *See Clausen v. Fidelity and Deposit Co.,* 95-0504 (La. App. 1 Cir. 8/4/95); 660 So. 2d 83, *writ denied,* 666 So.2d 320 (La.1986) (holding that statutory penalties and fees for bad faith claims handling are unavailable in cases where there is no underlying cause of action for failure to pay a legitimate claim).

## **CONCLUSION**

In conclusion, because Southwest cannot meet its burden in showing waiver of Hartford's timeliness defense, summary judgment on Southwest's claims is proper.

Lake Charles, Louisiana, this 29 day of April 2013.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE